THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE INTERNATIONAL SPY MUSEUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THE KGB SPY MUSEUM, ) | Case No. 1:19-cv-636 |
| JULIUS URBAITIS, ) | |
| AGNE URBAITYTE, and ) | |
| UNKNOWN CORPORATE ENTITY 1, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

The International Spy Museum ("SPY" or "Plaintiff") states the following for its Complaint against Defendants KGB Spy Museum ("KGB"), Julius Urbaitis, Agne Urbaityte, and a corporate entity whose identity is presently unknown ("Unknown Corporate Entity 1") (collectively, "Defendants").

**NATURE OF ACTION**

1. The International Spy Museum ("SPY") is a famous and respected museum of espionage located in Washington DC. This is an action for trademark infringement, false designation of origin, false advertising, dilution, and related injuries, arising out of the Defendants' unauthorized use of SPY's trademarks, under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"), the common law of New York, and New York General Business Law § 360-*l* and § 349.

## THE PARTIES

2. The International Spy Museum is a 501(c)(3) educational non-profit corporation with its principal place of business in Washington, DC, and which is incorporated in the state of Ohio.

3. Upon information and belief, Defendant KGB Spy Museum is a general partnership comprised of Defendants Julius Urbatis and Agne Urbaityte operating an entertainment attraction located at 245 W 14th St, New York, NY under the name "KGB Spy Museum".

4. Upon information and belief, Defendant Julius Urbaitis is an individual who is the operator of an entertainment attraction located at 245 W 14th St, New York, NY under the name "KGB Spy Museum".

5. Upon information and belief, Defendant Agne Urbaityte is an individual who is the operator of an entertainment attraction located at 245 W 14th St, New York, NY under the name "KGB Spy Museum".

6. Upon information and belief, in the alternative, Defendant Unknown Corporate Entity 1 is the operator of an entertainment attraction located at 245 W 14th St, New York, NY under the name "KGB Spy Museum", and which is under the direction and control of Defendant Julius Urbatis and Defendant Agne Urbaityte.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the federal claims for trademark infringement, false designation of origin, false advertising, and related injuries under 28 U.S.C. §§ 1331, 1338(a). This Court has subject matter jurisdiction over the state claims under 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction over the Defendants because Defendants are conducting business at a location in Manhattan, New York City, and offering their products and services to consumers in New York.

9. Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

**A.     SPY's Operations and Trademarks**

10. SPY is the first and most famous private museum of espionage in the United States, providing a wide variety of displays, artifacts, exhibits, workshops, and lectures covering the entire history of espionage in the United States and around the world.

11. Since its founding in 2002, SPY has consistently had more than 600,000 admissions per year, from visitors from all 50 states, and has had more than $125 million in ticket sales.

12. At its Washington DC location, SPY provides educational and entertainment exhibits and displays, operates and arranges museum exhibitions, and presents seminars, workshops, lectures and the like in the field of espionage. All of SPY's exhibits and presentations have a distinctive intrigue and espionage motif.  Many of SPY's exhibitions feature interactive displays and activities, all related to espionage.

13.  SPY also operates a website at the URL 'www.spymuseum.org', which displays information on SPY exhibits, programming, history, and mission, in a distinctive black-and-red color scheme.

 14. SPY is the owner of United States Trademark Reg. No. 3,890,202, which covers the mark "INTERNATIONAL SPY MUSEUM" for use in, among other things "Entertainment services, namely, providing amusement complexes featuring interactive video machines, games and displays, all of the foregoing with an intrigue and espionage motif; and educational services,

namely, conducting classes, seminars, workshops, lectures, and conferences in the field of intrigue and espionage." The mark was first used in commerce in 2002, was registered on December 14, 2010, and has been in continuous use since both its first use in commerce and its registration, and so is incontestable pursuant to 15 U.S.C. § 1065. Ex. 1.

15. SPY is the owner of United States Trademark Reg. No. 5,620,998, which covers the mark "SPY MUSUEM" for use in "Entertainment services, namely, providing amusement complexes featuring interactive video machines, games and displays, all of the foregoing with an intrigue and espionage motif; and educational services, namely, conducting classes, seminars, workshops, lectures, and conferences in the field of intrigue and espionage; Organization and operation of museum exhibitions for cultural or educational purposes; Organizing and arranging museum exhibitions for entertainment purposes; museum educational programs, namely, providing a continuing prerecorded audio program in the field of espionage accessible over the internet, and conducting programs in the field of espionage; Museum education services, namely, providing live classes in the field of espionage; Educational services, namely, developing, arranging, and conducting educational conferences and programs and providing courses of instruction in the field of espionage." The mark was first used in commerce in 2002, was registered on December 4, 2018, and has been in continuous use since both its first use in commerce and its registration. Ex. 2.

16. Both the "INTERNATIONAL SPY MUSEUM" mark and the "SPY MUSEUM" mark (collectively the "SPY Marks") are the exclusive property of Plaintiff.

17. The registrations of the SPY Marks are valid, subsisting, and in full force and effect.

18. Because of Plaintiff's exclusive and extensive use of the SPY Marks, the SPY Marks have acquired enormous value, and the public exclusively and uniquely identifies Plaintiff as the source of goods and services bearing the SPY Marks.

19. Based on the extensive use of the SPY Marks in connection with the operations of the Plaintiff, the SPY Marks have taken on secondary meaning among consumers as marks unique to and associated with Plaintiff and the Plaintiff's website.

20. Plaintiff owns common law rights to the SPY Marks through the extensive and continuous use by Plaintiff of those marks.

**B.     Defendants' Infringing Actions**

21. Upon information and belief, the Defendants own and operate an entertainment attraction located at 245 W 14th St, New York, NY under the name "KGB SPY MUSEUM", which began operations sometime after December 20, 2018.

22. Upon information and belief, at sometime after December 20, 2018, and after the Plaintiff's registration of the SPY Marks, Defendants began using in commerce in connection with their entertainment attraction the name "KGB SPY MUSEUM". This name is displayed on the Defendants' premises, including on a prominent outdoor sign. Ex. 3.

23. Upon information and belief, the Defendants operate the 'kgbspymuseum.org' website, through which the Defendants explain, document, describe and sell tickets to their 'KGB SPY MUSEUM' entertainment attraction. Defendants' website displays information in a black-and-red color scheme that is similar to the distinctive black-and-red color scheme used by Plaintiff's website. Ex. 4.

24. According to the Defendants' 'kgbspymuseum.org' website, the Defendants entertainment attraction consists of the display of artifacts and exhibits related to espionage, including interactive displays and exhibits.

25. The names "KGB SPY MUSEUM" and "INTERNATIONAL KGB SPY MUSEUM" appear in numerous and varied contexts on the Defendants'kgbspymuseum.org' website. Ex. 4.

26. The name "KGB SPY MUSEUM" also appears prominently on various social media channels for that are, upon information and belief, under the control and operation of the Defendants including Facebook ( https://www.facebook.com/KGBSpyMuseum ), Twitter (https://twitter.com/KGBSpyMuseum), YouTube (https://www.youtube.com/channel/UCDd9UpR6seZ6glp87CH5ygg), Pinterest (https://www.pinterest.com/kgbspymuseum), and Instagram (https://www.instagram.com/KGB_Spy_Museum) . Ex. 5.

27. Plaintiff has no association with Defendants and has never authorized Defendants to use the SPY Marks in any manner.

28. The entertainment services offered by Defendants are directly related to the goods and services offered by Plaintiff under the SPY Marks.

29. Defendants various uses of the names "KGB SPY MUSEUM" and "INTERNATIONAL KGB SPY MUSEUM" constitute infringement of Plaintiff's SPY Marks, which allows Defendants to capitalize on the recognition and goodwill of Plaintiff's SPY Marks, and to create initial interest confusion by creating the false impression that Plaintiff is associated with Defendants.

30. Plaintiff has no association with Defendants or control over the quality of Defendants goods and services offered to the public. Therefore, the use by the Defendants of the names "KGB SPY

MUSEUM and "INTERNATIONAL KGB SPY MUSEUM" will injure Plaintiff's goodwill and reputation, and will injure the value of Plaintiff's SPY Marks by dilution. If Defendants conduct is not enjoined Plaintiff's ability to use the SPY Marks to indicate goods and services emanating exclusively from Plaintiff.

C.     Defendants Deceptive And Unfair Practices

31. Upon information and belief, at some time prior to November of 2018, and before Defendant began operations of their Manhattan entertainment attraction, the Defendants began operating their 'kgbspymuseum.org' website.

32. In November of 2018, in the portion of the Defendant's website noting the contact information for the 'kgbspymuseum.org', the website displayed a telephone number. However, this telephone number was not the telephone number for the Defendants – it was, in fact, <u>the telephone number of the Plaintiff, The International Spy Museum</u>, which is located in Washington DC, and which of course does not even use the same telephone prefix as New York City. Ex. 6.

33. The Defendant's website includes a page on which users can submit "donations" and, as previously stated, the Defendant's website uses the ".org" extension, which is the extension normally used to indicate non-profit entities. Despite this use of the ".org" extension, and the presence of a page soliciting "donations", searches of the Internal Revenue Service database of valid 501(c)(3) organization reveal <u>no listing for a "KGB Spy Museum"</u>, or anything similar. Ex. 7.

34.  A search of the New York Department of State, Division of Corporations business entity database reveals <u>no listing for a "KGB Spy Museum"</u>, or anything similar, and consequently reveals no registered agent for services of process.

35. A search of the New York City Department of Consumer Affairs business license database reveals <u> no listing for a "KGB Spy Museum"</u>, or anything similar.

36. Upon information and belief, the Defendants appear to have failed to comply with the applicable corporate and consumer regulations governing businesses in New York.

37. The Defendants appear to be seeking to deceive consumers and the general public into believing that the "KGB Spy Museum" is a non-profit, 501(c)(3) educational charity.

38. Defendants' activities, including activities with respect to the SPY Marks have resulted in, are resulting in, and will continue to result in harm to Plaintiff and to the general public, including without limitation damage to Plaintiff's reputation and goodwill symbolized by the SPY Marks, as well as monetary losses and damage.

## COUNT I

Federal Trademark Infringement

15 U.S.C. § 1114

39. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

40. Plaintiff is the owner of the SPY Marks.

41. Defendants have both actual and constructive knowledge of the SPY Marks, and Plaintiff's ownership of the SPY Marks.

42. Defendants have used, are using, and have caused others to use marks confusingly similar to the SPY Marks, in connection with the advertising, promotion, and sale of their products and services without Plaintiff's authorization.

43. These uses of marks confusingly-similar to the SPY Marks have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, Plaintiff, in violation of 15 U.S.C. § 1114.

44. Defendants' conduct was and is knowing, deliberate, willful, and in bad faith, and done with the intent to trade on the goodwill and reputation of Plaintiff and the SPY Marks, and to deceive consumers into believing that Plaintiff is the source of Defendants' products and services, or that such products and services are endorsed by, sponsored by, or otherwise associated or affiliated with Plaintiff.

45. As a result of Defendants' conduct, Plaintiff has suffered and is likely to continue to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

46. Defendants' conduct has caused Plaintiff to lose control over the goodwill it has established in the SPY Marks and to irreparably injure Plaintiff's business, reputation, and goodwill. Plaintiff has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT II

Federal Trademark Infringement, Unfair Competition, And False Designation Of Origin

15 U.S.C. § 1125

47. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

48. Plaintiff is the owner of the SPY Marks.

49. Defendants have used, are using, and have caused others to use marks confusingly-similar to the SPY Marks in connection with the advertising, promotion, and sale of their products and services without Plaintiff's authorization or consent.

50. Defendants' unauthorized use of marks confusingly-similar to the SPY Marks have caused and are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by Plaintiff, in violation of 15 U.S.C. § 1125.

51. Defendants' conduct was and is knowing, deliberate, willful, and in bad faith, and done with the intent to trade on the goodwill and reputation of Plaintiff and the SPY Marks, and to deceive consumers into believing that Plaintiff is the source of Defendants' products and services, or that such products and services are endorsed by, sponsored by, or otherwise associated or affiliated with Plaintiff.

52. As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

53. Defendants' conduct has caused Plaintiff to lose control over the goodwill it has established in the SPY Marks and to irreparably injure Plaintiff's business, reputation, and goodwill. Plaintiff has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT III

Trademark Infringement, Unfair Competition, And False Designation Of Origin

New York Law

54. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

55. Plaintiff owns common law rights in its trademarks through the extensive and continuous use of those marks in New York and other States in the United States.

56. Defendants have had both actual and constructive knowledge of Plaintiff's superior rights in Plaintiff's trademarks.

57. Defendants have used, are using, and have caused others to use Plaintiff's trademarks in connection with the advertising, promotion, and sale of their products and services without Plaintiff's authorization.

58. Through Defendants' unauthorized use, Defendants unfairly appropriated or exploited the special qualities associated with Plaintiff's trademarks, resulting in the misappropriation of a commercial advantage belonging to Plaintiff.

59. Defendants' unauthorized use of Plaintiff's trademarks has caused and is likely to cause confusion, mistake, and deception as to their affiliation, connection, or association with, or sponsorship or approval by Plaintiff, in violation of New York law.

60. Defendants' unauthorized use of Plaintiff's trademarks has caused and is likely to cause confusion, mistake, and deception as to whether Plaintiff is the source of Defendants' products and services, or whether such products and services are endorsed or sponsored by, or otherwise associated or affiliated with Plaintiff, in violation of New York law.

61. As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

62. Plaintiff has suffered and continues to suffer irreparable injury for which it has no adequate remedy at law.

## COUNT IV

Trademark Dilution

N.Y. Gen. Bus. Law § 360-l

63. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

64. Plaintiff is the owner of the SPY Marks.

65. Defendants have used, are using, and have caused others to use the SPY Marks without Plaintiff's authorization.

66. Defendants' unauthorized uses of the SPY Marks have impaired and damaged and are likely to impair and damage the distinctiveness of the SPY Marks by causing the public to no longer associate the SPY Marks exclusively with Plaintiff

67. Defendants' unauthorized use is also likely to tarnish the reputation of Plaintiff and the goodwill Plaintiff has developed in the SPY Marks.

68. Defendants' conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of Plaintiff and the SPY Marks, to impair the distinctiveness of the SPY Marks, and to deceive consumers into believing that Plaintiff is connected with Defendants' products and services

69. As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

70. Plaintiff has suffered and will continue to suffer irreparable injury for which it has no adequate remedy at law.

## COUNT V

Unlawful Deceptive Acts and Practices

N.Y. Gen. Bus. Law § 349

71. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

72. Defendants have engaged in unlawful, false, and deceptive acts and practices seeking to deceive and/or mislead consumers and the general public by failing to comply with applicable corporate and consumer business regulations, by seeking to deceive consumers and the general

public into believing that Plaintiff was affiliated with or endorses or supports Defendants, and by seeking to deceive consumers and the general public into believing that the "KGB Spy Museum" is a non-profit, 501(c)(3) entity.

73. Defendants deceptive acts and practices are material and substantial.

74. As a direct result of Defendants deceptive acts and practices, Plaintiff has suffered injury including monetary damages, loss of reputation and goodwill.

75. As a direct result of Defendants deceptive acts and practices, Plaintiff has suffered and will continue to suffer irreparable injury for which it has no adequate remedy at law.

**WHEREFORE**, Plaintiff asks for judgment and relief from this Court as follows:

A.   A judgment in favor of Plaintiff and against Defendants, jointly and severally, on all counts alleged herein;

B.   A permanent injunction enjoining Defendants from:

(1) using the SPY Marks, alone or in combination with any word(s), term(s), designation(s), marks(s), or design(s), as well as any simulation, reproduction, copy, colorable imitation, or confusingly-similar variation of the SPY Marks anywhere in the United States, including in connection with the importation, promotion, advertisement, display, sale, offering, manufacture, production, circulation, distribution or provision of goods or services;

(2) using the SPY Marks, alone or in combination with any word(s), term(s), designation(s), marks(s), or design(s), as well as any mark, image, or depiction that is confusingly similar to or likely to impair the distinctiveness of the SPY Marks, as any portion of any domain name, keyword, metatag, source code, or other Internet search term, or otherwise using the SPY Marks on or in connection with any website owned or controlled by the Defendants;

(3)  applying to register or registering in the United States Patent and Trademark Office, in any state trademark registry, any mark consisting in whole or in part of the SPY Marks, or consisting in whole or in part of any simulation, reproduction, copy, colorable imitation, or confusingly-similar variation of the SPY Marks, or taking any other action designed to give Defendants any claim or rights in or to the SPY Marks;

(4) using, in any manner in connection with any advertising, promotion, products, services or business, any of the SPY Marks, or any simulation, reproduction, copy, colorable imitation, or confusingly-similar variation of the SPY Marks, in a manner as to dilute or tend to dilute the distinctive quality of the SPY Marks;

(5) engaging in any other activity constituting unfair competition with Plaintiff, constituting an infringement of the SPY Marks,

(6) instructing, assisting, aiding or abetting any other person or entity in engaging in the activities referred to in subparagraphs 1 through 6 above;

C.  A permanent injunction that requires Defendants, their employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action to engage in corrective advertising in a form pre-approved by Plaintiff and the Court to dispel the confusion caused by Defendants' unlawful conduct; and

D.   An award of compensatory damages under 15 U.S.C. § 1117 and New York law for all injuries to Plaintiff suffered herein;

E.  An accounting of Defendants' profits based on Defendants' acts alleged herein under 15 U.S.C. § 1117 and New York law and

F.      Award of damages equal to three times Defendants' profits based on Defendants' acts alleged herein;

G.      An award of punitive damages under New York law;

H      An award of enhanced or treble damages under 15 U.S.C. § 1117 and New York law;

I.      An award of attorneys' fees and costs under 15 U.S.C. § 1117 and New York law;

J.      Prejudgment and post-judgment interest; and

K.      All other such relief as the Court deems just and proper.


DATED:      January 22, 2019

                The Roberts Law Group, PLLC

          By:    /S/ Sandy A. Roberts

                Sandy A. Roberts
                sroberts@robertslawgroup.com

                1717 K Street, NW
                Suite 900
                Washington, DC 20006
                202-347-9700
                Attorneys for Plaintiff
                The International Spy Museum